IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CRYSTAL PAXSON                                                                                          PLAINTIFF

V.                              Case No. 3:24-CV-00156-LPR-BBM

LELAND DUDEK, Acting Commissioner,
Social Security Administration[1]                                                                     DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.   INTRODUCTION**

On April 9, 2021, Plaintiff Crystal Paxson ("Paxson") filed a Title II application with the Social Security Administration ("SSA") for a period of disability and disability insurance benefits. (Tr. at 26). In the application, she alleged disability beginning on April 2, 2020. *Id*. The application was denied initially and on reconsideration. *Id*.

---

[1] As of the date of this Recommendation, Leland Dudek serves as Acting Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Dudek is automatically substituted as the Defendant.

After conducting a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision, finding that Paxson was not disabled from the alleged onset date of April 2, 2020, through the date of the decision, December 8, 2022. (Tr. at 26–36). The Appeals Council denied Paxson's request for review of the ALJ's decision on September 6, 2023. (Tr. at 14–18). The ALJ's decision now stands as the final decision of the Commissioner, and Paxson has requested judicial review. For the reasons stated below, the Court recommends that the Commissioner's decision be affirmed.

## II. THE COMMISSIONER'S DECISION

The ALJ found that Paxson has not engaged in substantial gainful activity since the alleged onset date of disability—April 2, 2020.[2] (Tr. at 28). Paxson meets the insured status requirements of the Social Security Act through December 31, 2025. *Id*. At Step Two, the ALJ determined that Paxson has the following severe impairments: anxiety, bipolar disorder, depression, personality disorder, panic anxiety syndrome, chronic pain, mild degenerative joint disease of the lumbar spine, degenerative disc disease of the cervical spine, degenerative joint disease of the left first CMC joint, mild carpal tunnel syndrome, and De Quervain's tenosynovitis. (Tr. at 29).

At Step Three, the ALJ found that Paxson's impairments did not meet or equal a

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

Listing.³ (Tr. at 29–31). The ALJ next decided that Paxson has the residual functional capacity ("RFC") to perform work at the medium exertional level, with the following additional limitations: (1) cannot climb ladders, ropes, and scaffolds; (2) can no more than frequently reach overhead with the bilateral upper extremities; (3) can no more than frequently handle and finger; (4) must avoid concentrated exposure to excessive vibration; (5) can use judgment to make simple work-related decisions; (6) can maintain concentration, persistence, and pace for simple tasks; (7) can understand, carry out, and remember simple work instructions and procedures; (8) can adapt to changes in the work setting that are simple, predictable and easily explained; and (9) can tolerate occasional interaction with coworkers, supervisors, and the public. (Tr. at 31).

At Step Four, the ALJ found that Paxson is unable to perform any of her past relevant work. (Tr. at 34). Relying upon testimony from a Vocational Expert ("VE"), the ALJ determined, based on Paxson's age, education, work experience and RFC, that there are jobs in the national economy that Paxson can perform. (Tr. at 35–36). Therefore, the ALJ concluded that Paxson was not disabled. *Id.*

---

³ 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404,1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). As explained in *Sullivan v. Zebley,* excerpted below:

> The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." . . . That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.

493 U.S. 521, 532 (1990) (emphasis in original) (cleaned up).

## III. DISCUSSION

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.     Paxson's Argument on Appeal

Paxson contends that the evidence supporting the ALJ's decision is less than substantial, warranting reversal. Specifically, Paxson takes issue with two of the ALJ's mental RFC findings: (1) "The claimant can use judgment to make simple work-related decisions"; and (2) "She can tolerate occasional interaction with coworkers, supervisors, and the public." (Tr. at 31; Doc. 8 at 10–18). Paxson argues that these findings are inconsistent with those of the state agency psychological consultants, even though the ALJ found their opinions persuasive, (Doc. 8 at 9–10). Because Paxson limits her appeal to the ALJ's finding regarding her mental RFC, the Court will limit its discussion to Paxson's mental impairments.[4]

### 1.     State Agency Psychological Consultants' Opinions

Generally, in these types of cases, SSA medical or psychological experts review the claimant's medical records at the initial and reconsideration levels. They draw conclusions about what the claimant can functionally do in a work setting, and the ALJ evaluates the experts' conclusions for persuasiveness. Based on those opinions and the balance of the evidence in the record, the ALJ assigns an RFC.[5]

---

[4] *See Noerper v. Saul*, 964 F.3d 738, 741 n.1 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.") The Court notes that Paxson's issues on appeal relate only to Paxson's mental abilities. (Doc. 8 at 12–17).

[5] "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting." *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (cleaned up). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citation omitted). The RFC determination "is ultimately an administrative determination reserved to the Commissioner." *Id.* (citing 20 C.F.R. §§ 416.927(e)(2), 416.946).

The first SSA psychological consultant, Laurie Clemons, Ph.D., issued her RFC opinion on June 9, 2021, at the initial determination level.[6] (Tr. at 76–79). The second psychological consultant, Christal Janssen, Ph.D., issued her RFC opinion on March 10, 2022, at the reconsideration determination level. (Tr. at 89–94). Dr. Clemons found that Paxson had no more than moderate mental limitations, with the following mental RFC: "capacity for work *where interpersonal contact is incidental to the work performed*; complexity of tasks is learned and performed by rote, with few variables, and *little judgment*; and the supervision required is simple, direct, and concrete." (Tr. at 78) (emphasis added). Dr. Janssen, like Dr. Clemons, also assessed no more than moderate limitations, but she tweaked the first RFC slightly: "able to perform simple, routine, repetitive tasks, with incidental interpersonal contact and direct/concrete supervision." (Tr. at 90).

The ALJ found these opinions to be generally persuasive, writing that, "while noting that a limitation to direct and concrete supervision is vague, an overall finding of moderate social limitations is supported by treatment notes that often describe the claimant's speech as rapid with excessive repetition, and a limitation to simple tasks is supported by

---

[6] The relevant time-period for determination of eligibility for benefits is April 2, 2020, through December 8, 2022. (Tr. at 35).

observations that the claimant was often inattentive/distracted."[7] (Tr. at 34). The ALJ noted that the experts' findings of no more than moderate limitations were consistent with Paxson's ability to perform daily activities and her conservative mental health treatment. *Id.*

### 2. Paxson's Mental Health Treatment

Turning to Paxson's psychological treatment records, Paxson was diagnosed with a variety of mental illnesses, and this impacted her ability to perform some daily functions. (Tr. at 89). However, she was still able to go out alone, use a phone, do crafts, prepare simple meals, do laundry, drive, clean, manage her finances, shop in stores, and attend church. (Tr. at 30–33, 274–276). Paxson also admitted that she accompanied her husband on business trips.[8] (Tr. at 33, 690–691, 763–775, 828–829). She said she could get along with others and did not have problems with people of authority. (Tr. at 90).

Paxson did not seek regular or continuing psychiatric treatment[9]; Paxson chose to use only her primary care physician ("PCP") for psychotropic medication prescriptions,

---

[7] The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). However, "[t]he first two factors—supportability and consistency—are the most important." *Id.* (citing 20 C.F.R. § 404.1520c(a)). Although prior to 2017, treating physician opinions were entitled to great weight, pursuant to the 2017 SSA regulation change, "treating physicians are no longer entitled to this special deference." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).

[8] Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

[9] The failure to seek regular and continuing treatment contradicts allegations of disability. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997).

rather than a psychiatrist. (Tr. at 33, 539–541). She did not require inpatient treatment. Moreover, other than some mood variability, distractibility, and rapid speech, mental status examinations were grossly normal; at her PCP appointments, Paxson often demonstrated appropriate affect, logical though process, intact computational ability, and normal judgment and abstract reasoning. (Tr. at 30–33, 482, 514, 519–536, 545–569, 580–597, 602–619, 740–761, 827–839).

> Specifically, the ALJ noted the following:
>
> Mentally, treatment has been limited to therapy and medication prescribed by the claimant's primary care provider. The claimant has previously received mental health treatment, and she reestablished care with a mental health provider in June 2020. Thereafter, the claimant attended regular therapy appointments, but although she attended an initial appointment with a psychiatrist in July 2020, she preferred to have her primary care provider continue management of her psychotropic medication. Therapy treatment notes describe variations in the claimant's mood, but her affect has generally been appropriate. She is sometimes inattentive and distracted, and her speech is sometimes normal but often rapid with excessive repetitions. Although her symptoms seemed to wax and wane, the claimant has never been referred for urgent/emergent treatment, inpatient treatment, or an intensive outpatient program. Further, her daily activities include preparing simple meals, cleaning, doing laundry, driving, and managing her own finances. She got married in August 2021 and sometimes accompanies her husband on business trips, and they took a trip to New York in September 2021.

(Tr. at 33) (internal citations omitted).

### 3. ALJ's Mental RFC Findings

The ALJ, considering the psychological opinions of Dr. Clemons and Dr. Janssen and the medical evidence in its entirety, formulated an RFC for mental function in a work setting, contemplating simple work, in the general sense. The portion of the ALJ's assigned RFC challenged now by Paxson specifically limited Paxson to using "judgment to make

simple work-related decisions," and to tolerating "occasional interaction with coworkers, supervisors, and the public." (Tr. at 31). This differs from the psychological experts' determination that Paxson "retains the capacity for work where interpersonal contact is incidental to the work performed," and the work requires "little judgment." (Tr. at 33–34). Paxson argues that, because the ALJ found the consultants' opinions "generally persuasive," the RFC should have included the consultants' language, limiting Paxson to work requiring "little judgment" and only "incidental interpersonal contact." (Doc. 8 at 12–13) ("The ALJ's mental RFC determination is not supported by substantial evidence when he grants significant weight to a medical opinion concerning the claimant's limitations, but then fails, without explanation, to incorporate those limitations into the claimant's mental RFC.").

In short, Paxson avers that the RFC is flawed simply because it contains different language from that of the experts' opinions. *Id.* Paxson is wrong. An ALJ is free to accept only the portions of a medical opinion that he deems persuasive. *Austin,* 52 F.4th at 729. He need not incorporate every single line of the medical opinion into the assigned RFC, and he may reject portions of the opinion without specifically elaborating upon his decision to do so. *Id*. Likewise, the ALJ's RFC determination need only employ the portions of various medical opinions that: (1) the ALJ deems are supported by the evidence; and (2) the ALJ finds are an accurate reflection of the claimant's credible limitations. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).

Here, the ALJ found the opinions of the psychological consultants "generally

persuasive," and concluded that the RFC was supported by "State agency psychological consultants Drs. Clemons and Janssen that the claimant can perform a range of simple, medium work that involves only limited interaction with others." (Tr. at 34). The Court agrees and finds that the ALJ's mental RFC determination is supported by substantial evidence on the record as a whole.

Notably, this Court rejected a similar argument in *Turner v. Soc. Sec. Admin.,* No. 4:23-CV-00684-JTK, 2024 WL 964176, at *3 (E.D. Ark. Mar. 6, 2024), holding that an RFC limitation to *occasional* contact is harmonious with an agency restriction to *incidental* interpersonal contact. Like *Turner*, Paxson's claim that the words *incidental* and *occasional*, in the context of interpersonal interaction, are too dissimilar to withstand scrutiny fails. This Court, like many others, will not quibble with the difference between *little judgment* and *judgment to make simple work-related decisions*. Here, the ALJ, charged with creating an RFC based on the record as a whole, including the opinions of state psychological consultants and Paxson's medical records, did just that. The RFC sufficiently incorporated all of Paxson's credible limitations, both physical and mental, and the Court finds no reversible error.

## IV.   CONCLUSION

There is substantial evidence to support the Commissioner's decision that Paxson was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 8th day of May, 2025.

_____
UNITED STATES MAGISTRATE JUDGE